IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:14-CV-79-D

| | | |
|---|---|---|
| NICHELLE ELIZABETH FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Nichelle Elizabeth Ford ("plaintiff" or, in context, "the claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1]  The case is before the court on the parties' respective motions for judgment on the pleadings.  (D.E. 22, 24).  Each party filed a memorandum in support of its motion.  (D.E. 23, 25).  The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (*See* D.E. 26).  For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

# BACKGROUND

## I. CASE HISTORY

Plaintiff filed applications for DIB and SSI on 26 September 2005, alleging a disability onset date of 4 February 2004. Transcript of Proceedings ("Tr.") 125. On 3 September 2008, an administrative law judge ("ALJ") issued a decision ("2008 decision") denying plaintiff's applications, finding that she was not under a disability from the alleged onset of disability through the date of the decision. Tr. 58-68. The record indicates that plaintiff did not appeal and the ALJ's decision therefore became the final decision of the Commissioner. *See*, *e.g.*, Tr. 125; 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff thereafter filed the applications for DIB and SSI that are the subject of the instant proceeding on 19 April 2010, alleging a disability onset date of 4 September 2008. Tr. 125. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 125. On 10 October 2012, a video hearing was held before an ALJ different from the one issuing the 2008 decision, at which plaintiff, who was represented by counsel, and a vocational expert testified. Tr. 21-57. On 16 November 2012, an ALJ issued a decision (Tr. 125-33) denying the applications. Plaintiff timely requested review by the Appeals Council. Tr. 19-20. The Appeals Council denied the request on 16 January 2014, but admitted additional evidence into the record (Tr. 586-747). Tr. 7-11. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 6 May 2014, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5)).

## II.    STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B).  The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings ["Listings"] in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

3

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.* §§ 404.1523, 416.923.

## III.    FINDINGS OF THE ALJ

Based on the birthdate given for her throughout the record, including in her testimony, plaintiff was 40 years old on the alleged onset date of disability and 44 years old on the date of the hearing. *See*, *e.g.*, Tr. 27, 29, 245, 347, 383. She testified that she has a high school education and some college, and the ALJ found that she has past relevant work as a sales attendant and cashier. Tr. 29; 133 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her

alleged onset of disability.  Tr. 128 ¶ 2.  At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations:  migraines; disc bulge; degenerative disc disease lumbar; degenerative joint disease knees; and borderline intellectual functioning.  Tr. 128 ¶ 3.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings.  Tr. 128 ¶ 4.

Giving great weight to the RFC set out in the 2008 decision, the ALJ next determined that plaintiff had the RFC to perform a limited range of work at the light exertional level.[2]  Tr. 125; 129 ¶ 5.  The ALJ included in the RFC the following limitations:

> [T]he claimant is limited to only occasional climbing stairs or ramps; occasional bending/balancing, stooping, crawling, kneeling, or crouching; and no climbing of ropes, ladders or scaffolds.  The claimant should avoid hazardous machinery and is limited to a low production occupations requiring no complex decision making, constant change, or dealing with crisis situations.  Finally, the work environment should have no loud/sudden noises (clinging/clacking of heavy machinery).

Tr. 129 ¶ 5.

At step four, the ALJ found that plaintiff was able to perform her past relevant work as a "sales attendant" and "cashier II," referring to occupational titles in in the DOT.  Tr. 133 ¶ 6.  He

---

[2] The Regulations define "light work" as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b); *see also Dictionary of Occupational Titles* ("DOT"), app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http:// www.oalj.dol.gov/libdot.htm (last visited 9 July 2015).  "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT.  *See* 20 C.F.R. §§ 404.1567, 416.967.

therefore concluded that plaintiff was not disabled from the alleged onset of disability through the date of his decision.  Tr. 133 ¶ 7; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld.  *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla of evidence, but somewhat less than a preponderance.  *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence.  *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).  In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979).  A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion.  *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a

whole, including the [additional] evidence, in order to determine whether substantial evidence supports the [administrative] findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1–2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## DISCUSSION

## I. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that this case should be remanded for the award of benefits or, in the alternative, a new hearing on the grounds that: (1) the ALJ erroneously evaluated the medical opinions of her treating neurologist, John Douglas Mann, M.D., resulting in an improper RFC determination; (2) the ALJ also erroneously evaluated the 2008 decision; and (3) the Appeals Council erred by failing to assess the weight due the additional evidence it admitted into the record. The court will address each contention in turn.

## II. ALJ'S EVALUATION OF DR. MANN'S MEDICAL OPINIONS

### A. Applicable Legal Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently

specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recommendation adopted by* 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See*, *e.g.*, Soc. Sec. R. 96–6p, 1996 WL 374180, at *3 (2 July 1996).

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"). *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d) (partial listing of "other sources"); 416.913(d)(1) (same). As with

opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at \*6; *Napier*, 2013 WL 1856469, at \*2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. R. 06-03p, 2006 WL 2329939, at \*5.

### B. Dr. Mann's 2010 Medical Opinions

Plaintiff was referred to Dr. Mann for treatment of headaches beginning in June of 2008. Tr. 130. He continued to treat her until at least August 2012. Tr. 587.

The first of Dr. Mann's opinions at issue are contained in his report on a 26 May 2010 office visit with plaintiff (signed by Dr. Mann on 3 June 2010). Tr. 403-05. In it, Dr. Mann documents the history of plaintiff's headaches and notes that although she continues to suffer headaches, her condition has improved to some extent with medication. Tr. 403. His diagnostic impressions were posttraumatic headache (from previous car accidents); posttraumatic headache with migraine features; chronic daily headache; and hypertension. Tr. 404. In the section on plaintiff's treatment plan, Dr. Mann opines as follows:

> [Plaintiff's medications] allow[] her to be functional re: activities of daily living. She is otherwise disabled from the standpoint of gainful employment because of the persistence and severity of her head pain.

Tr. 404-05.

After describing Dr. Mann's opinions, the ALJ states that "[l]ittle weight is given to this opinion [that plaintiff is disabled] as it is based on an issue reserved to the Commissioner." Tr. 131 ¶ 5. Plaintiff argues that the ALJ should have given controlling or at least great weight to this opinion. The court finds no error.

The reason given by the ALJ for attribution of "little weight" to the ALJ's opinion of disability is well grounded in the Regulations. Opinions from medical sources on the ultimate issue of disability are reserved to the Commissioner and are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996); *Dowdle v. Astrue*, No. 2:10–CV–2308–MBS, 2012 WL 887471, at *8 (D.S.C. 15 Mar. 2012) ("An opinion that a claimant is 'disabled' or 'unable to work' is not a medical opinion but an administrative finding, and a physician's opinion on this ultimate issue is not entitled to special weight."). The record, including the additional evidence introduced by the Appeals Council, provides substantial evidence for the ALJ's determination, as the discussion below of Dr. Mann's 2011 opinions indicates. The court accordingly rejects plaintiff's challenge to the weight accorded Dr. Mann's 2010 opinions.

## C.    Dr. Mann's 2011 Medical Opinions

The other medical opinions by Dr. Mann at issue are set out in a form he completed entitled "MEDICAL SOURCE STATEMENT About What the Claimant Can Still Do Despite Medical Impairment(s)" and dated 15 June 2011. Tr. 462-66. The ALJ gave only "partial weight" to this statement. Tr. 131 ¶ 5. He explained his analysis as follows:

> The undersigned gives only partial weight to Dr. Mann's June 2011 mental medical source statement which appears to be somewhat outside the scope of his specialty. His opinion that due to her migraines, the claimant had marked mental limitations in her ability [1] to maintain attention and concentration, [2] perform within a schedule, [3] sustain an ordinary routine, and [4] to complete a normal workday and workweek[3] appears to rely heavily on the subjective report of symptoms and limitations provided by the claimant, and the totality of the evidence does not support the opinion. Notably, the claimant was felt to be not significantly impaired in all other mental categories described, including her ability to understand, remember and carry out simple or detailed instructions; to

---

[3] Additional findings by Dr. Mann in the medical source statement that are seemingly subsumed in these four opinions were that plaintiff has frequent "[d]eficiencies of concentration, persistent or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)" (Tr. 465) and that on average her migraines would cause her to be absent from work more than three times a month (Tr. 463).

make simple work-related decision; and to get along with others. Finally, the only sign or symptom noted by Dr. Mann was sleep disturbance (Exhibit 4F, 6F and 9F).

Tr. 131 ¶ 5. The ALJ thus gave partial weight to the four marked-limitation opinions of Dr. Mann for the following reasons: they are outside the scope of Dr. Mann's expertise; he relied heavily on plaintiff's subjective reports; the other mental health findings in the medical source statement contradict the marked-limitation opinions; the paucity of signs and symptoms noted by Dr. Mann contradicts the opinions; and the totality of the evidence does not support the opinions.

Plaintiff contends that Dr. Mann's opinions should be given controlling or great weight. However, considering the record as supplemented by the Appeals Council, the court finds that substantial evidence supports each of the reasons cited by the ALJ for attribution of partial weight and that these opinions are otherwise proper.

### 1. Opinions as Somewhat Outside of Dr. Mann's Expertise

As indicated, Dr. Mann has a specialty in neurology. Plaintiff claims that he has specific training in the diagnosis and treatment of migraines. While there is obviously a neurological aspect to the areas in which Dr. Mann opined plaintiff to have marked limitations, they also have a strong psychiatric aspect. Indeed, the table including Dr. Mann's marked-limitation ratings is entitled "Work Limitations Related to *Psychiatric* State." Tr. 464 (emphasis added). The record does not show that Dr. Mann has a specialty in psychiatry. Whether a source is a specialist in the area subject to his opinions is a factor properly considered in determining the weight to be accorded such opinions. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Therefore the initial reason given by the ALJ for his attribution of partial weight to Dr. Mann's 2011 opinions has adequate support in the record and is based on proper legal standards.

## 2.    Reliance on Plaintiff's Subjective Complaints

Plaintiff argues that Dr. Mann's evident reliance on her subjective complaints was appropriate because the diagnosis and treatment of migraines reasonably require reliance on the patient's subjective complaints.  It is true, of course, that "[a] party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain."  *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012).  "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment."  *Id*. (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595.

An ALJ's assessment of a claimant's credibility involves a two-step process.  *Craig*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); Soc. Sec. R. 96–7p, 1996 WL 374186, at *1 n.1, 2 (2 July 1996).  First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms.  Soc. Sec. R. 96-7p, 1996 WL 374186, at *2.  Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record.  *See id.; see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms).  If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence."  Soc. Sec. R. 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the

claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 130 ¶ 5. But at step two, he found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 130 ¶ 5. The ALJ explained in detail the reasons for not crediting plaintiff's allegations:

> The claimant has chronic pain syndrome without any significant physical findings to explain them. Furthermore, there has been some suggestion that the claimant's pain is psychogenic, and she has been dismissed/unwelcome from certain medical facilities. There is also some evidence of pain medication seeking behavior. In addition, the claimant's ability to maintain her household, cook, and clean, in conjunction with the medical evidence demonstrating significant strength, negative straight leg raising, and intact sensations and gait, reflects a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments. The claimant's headaches appear to have responded well to DHE [*i.e.*, dihydroergotamine] treatment and knee x-rays showed only early arthritis. Her back pain appears to have improved as well with pain at a level of 3 out of 10. Despite her borderline intellectual functioning, the claimant has held several jobs over the years. Mental evaluations show only mild to moderate mental limitations.

Tr. 132-33 ¶ 5.

The court finds that the ALJ's credibility assessment, which plaintiff does not directly challenge, is supported by substantial evidence and is otherwise proper. The court concludes that the ALJ did not err in citing Dr. Mann's reliance on plaintiff's subjective complaints as a basis for attributing limited weight to his 2011 opinions.

### 3. Absence of Significant Impairment in Other Areas

As discussed, Dr. Mann opined plaintiff to have marked limitations in four areas, described by the ALJ as follows: "ability to maintain attention and concentration, perform

within a schedule, sustain an ordinary routine, and to complete a normal workday and workweek." Tr. 131 ¶ 5. The ALJ is correct that these four areas are the only areas among the 20 listed in the table in question in which Dr. Mann found plaintiff to have any significant limitation.[4] Several areas in which Dr. Mann did not find any significant limitation relate to the four areas in which Dr. Mann did find marked limitations. These include several cited by the ALJ, namely, plaintiff's "ability to understand, remember and carry out simple or detailed instructions; [and] to make simple work-related decision[s]." Tr. 131 ¶ 5. Dr. Mann's finding of lack of significant limitation in these areas can reasonably be viewed as not supporting and tending to contradict his finding of marked limitation in the four specified areas.

The support provided for medical opinions and their consistency with other evidence are, of course, relevant considerations in determining the weight to be accorded the opinions. *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4). The ALJ therefore properly relied on benign findings made by Dr. Mann in his medical source statement in partially discrediting Dr. Mann's marked-limitation opinions.

### 4. Sleep Disturbance as the Only Sign and Symptom Cited

The ALJ correctly found that in the section of the medical source statement listing signs and symptoms Dr. Mann identified only sleep disturbance as a sign and symptom plaintiff had. Tr. 462. Among the 31 other signs and symptoms listed that Dr. Mann did not identify plaintiff as having was difficulty thinking or concentrating. Tr. 462. That sign and symptom clearly relates to the "ability to maintain attention and concentration for extended periods," one of the areas in which Dr. Mann opined plaintiff to have marked limitations. Because, again, support for opinions by other evidence and their consistency with other evidence are appropriate factors in

---

[4] Although the ALJ stated that Dr. Mann found plaintiff not to have any significant limitations in all other 16 areas, Dr. Mann made that finding in 15 of these areas and left one area unmarked. *See* Tr. 464-65.

determining the weight to be given the opinions, the ALJ's reliance on Dr. Mann's findings on signs and symptoms in diminishing the weight accorded Dr. Mann's marked-limitation opinions was proper.

### 5. Totality of the Evidence

The ALJ acted properly, of course, in looking to the extent to which the totality of the evidence supports Dr. Mann's marked-limitation opinions in determining the weight to be given them. Substantial evidence supports his determination that the totality of the evidence warrants attribution of only partial weight to Dr. Mann's marked-limitation opinions.

Besides the other findings by Dr. Mann in the medical source statement already discussed, evidence supporting the ALJ's assessment includes the finding by plaintiff's primary care physician, Kent Lucas, M.D., in the note on his office visit with her on 20 May 2010, about two weeks before Dr. Mann's 2010 opinions, that plaintiff's migraine headaches were "stable" and "under reasonable control on her current regimen." Tr. 390. The ALJ discusses this note in his decision. Tr. 131 ¶ 5.

In addition, there is evidence regarding plaintiff's course of treatment with Dr. Mann from December 2011 on, which the ALJ described as follows:

> In December 2011, the claimant received [DHE] migraine treatment. Followup records show that this treatment was quite successful in decreasing the intensity of her headaches which now ranged at about 1-3 out of 10. They occurred about 1-2 a month. Her pain also responded to Percocet and her nausea responded to Phenergan (Exhibit 18F).

Tr. 131 ¶ 5.

In his report on his consultative psychological examination of plaintiff on 27 November 2010, psychologist Gerald Strag, Ed.D. found plaintiff to have a Global Assessment of

Functioning ("GAF") rating of 60, indicating only moderate symptoms,[5] although he also found

her attention and concentration to be poor apparently based on a serial addition and subtraction

test he administered to her. Tr. 447, 448. The ALJ gave Dr. Strag's findings partial weight. Tr.

132 ¶ 5.

Further, the nonexamining state agency consulting physicians and psychologists did not

find plaintiff disabled in their evaluations in December 2010, and February and March 2011. *See*

Tr. 69-79, 107-20. The ALJ gave their opinions "partial weight." Tr. 132 ¶ 5.

---

[5] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). Selected GAF scores have the following meanings:

> 90-81 Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).

> 80-71 If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).

> 70-61 Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

> 60-51 Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

> 50-41 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

> 40-31 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

> 30-21 Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

DSM–IV–TR 34.

The ALJ's summary of the evidence, quoted previously in discussing his credibility determination, is also relevant here:

> The claimant has chronic pain syndrome without any significant physical findings to explain them. Furthermore, there has been some suggestion that the claimant's pain is psychogenic, and she has been dismissed/unwelcome from certain medical facilities. There is also some evidence of pain medication seeking behavior. In addition, the claimant's ability to maintain her household, cook, and clean, in conjunction with the medical evidence demonstrating significant strength, negative straight leg raising, and intact sensations and gait, reflects a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments. The claimant's headaches appear to have responded well to DHE treatment and knee x-rays showed only early arthritis. Her back pain appears to have improved as well with pain at a level of 3 out of 10. Despite her borderline intellectual functioning, the claimant has held several jobs over the years. Mental evaluations show only mild to moderate mental limitations.

Tr. 132-33 ¶ 5.

### D.    Implications for the RFC Determination

As noted, plaintiff argued that the purported failure by the ALJ to properly evaluate the opinions of Dr. Mann rendered his RFC determination erroneous. Because the court has found that the ALJ's evaluation of Dr. Mann's opinions was proper, that evaluation does not undermine the propriety of the RFC determination. Notably, the ALJ included limitations in his RFC determination addressing plaintiff's migraines—low production occupations requiring no complex decision making, constant change, or dealing with crisis situations; and a work environment without loud or sudden noise.[6] Inclusion of these limitations substantiates that the ALJ did not reject completely Dr. Mann's opinions, but gave them some weight, as he stated. The court concludes that plaintiff's attack on the ALJ's RFC determination fails.

---

[6] *See* Tr. 520 (1 Dec. 2011 emergency room note stating that noise worsened plaintiff's migraine pain); 556 (15 Feb. 2012 office visit note by Dr. Mann noting that plaintiff's migraines are associated with sensitivity to sound).

## III.    ALJ'S EVALUATION OF THE 2008 DECISION

### A.    Applicable Legal Standards

The ALJ is required to consider the findings contained in a prior final decision of the Commissioner in determining disability in a subsequent application involving an unadjudicated time period. *Albright v. Comm'r of the Soc. Security Admin.*, 174 F.3d 473, 477-78 (4th Cir. 1999) (explaining that the justification for this requirement was that "[t]o have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large— that final agency adjudications should carry considerable weight"); *see also* Soc. Sec. Acquiescence R. 00-1(4), 2000 WL 43774, at *4 (12 Jan. 2000) (addressing weight to be given prior final decisions of the Commissioner).    An ALJ is "not bound to adopt those findings verbatim but must consider the prior findings and assign a weight to such findings." *Manuel v. Colvin*, No. 1:11CV8, 2015 WL 519481, at *5 (M.D.N.C. 9 Feb. 2015) (citing *Albright*, 174 F.3d at 477-78).

Acquiescence Ruling 00-1(4) sets forth the following requirements for assessing the weight due a prior final decision:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Soc. Sec. Acquiescence R. 00-1(4), 2000 WL 43774, at *4.

### B.    Analysis

The 2008 decision determined plaintiff to have an RFC to perform light work subject to the sole limitation of frequent stooping.  Tr. 64 ¶ 5.  Although the decision found plaintiff's migraines to be a severe impairment, it included no limitation in the RFC relating directly to them.

In the instant decision, the ALJ gave "great weight" to the RFC determination in the 2008 decision, explaining as follows:

> Great weight is given to the [RFC] as outlined in the previous decision as per AR 00-1(4), which was issued in response to the decision in *Albright v. Commissioner of the Social Security Administration*, 174 F.3d 473 (4th Cir. 1999) [interpreting *Lively v. Secretary of Health and Human Services*] . . . .
>
> Having reviewed the evidence concerning the period previously adjudicated through the date of the decision, the undersigned finds that new and updated evidence supports a[n] [RFC] for light work with the addition[al] limitations set forth therein.

Tr. 125-26.

Plaintiff challenges the ALJ's attribution of great weight to the 2008 decision, in part, on the grounds that substantial time passed between the date of that decision, 3 September 2008, and the date of the instant decision, 16 November 2012, a period of more than four years.  The contention is unconvincing.

For one, the period covered by the instant decision is contiguous with that covered by the prior decision.  The instant period, extending back to 4 September 2008, began the day after the prior period.  There is no gap between the two periods.

Moreover, plaintiff has not pointed to evidence establishing that her migraine condition worsened during this period.  To the contrary, as referenced herein, the longitudinal record shows that it improved.

Plaintiff also contends that the RFC determination in the 2008 decision did not merit great weight because it was made without benefit of the extensive records, including opinions, of Dr. Mann regarding plaintiff's migraines. Dr. Mann did not start treating plaintiff until June 2008, only about three months before the 2008 decision was issued.

But the instant decision makes apparent that the ALJ carefully reviewed the records of Dr. Mann before him. And the court, taking into account the additional records admitted by the Appeals Council, has already found that the weight he accorded Dr. Mann's opinions was proper.

While giving great weight to the RFC in the 2008 decision, the ALJ did not adopt it in whole. Rather, as discussed, he included in his RFC limitations relating to plaintiff's migraine condition, again: low production occupations requiring no complex decision making, constant change, or dealing with crisis situations; and a work environment without loud or sudden noise. Notably, the ALJ recited in his decision the factors Acquiesce Ruling 00-1(4) requires an ALJ to consider in determining the weight to be accorded a prior final decision of the Commissioner. Tr. 125.

The court concludes that the ALJ's attribution of great weight to the 2008 decision was proper. The court accordingly rejects plaintiff's challenge to it.

## IV.    APPEALS COUNCIL'S DENIAL OF REVIEW

Plaintiff submitted to the Appeals Council for the first time and it admitted into evidence 150 pages of records from Carolina East Medical Center, covering the period from July 2008 until August 2012. Tr. 586-747. Plaintiff contends that these exhibits comprised new and material evidence under 20 C.F.R. §§ 404.970(b), 416.1470(b), and that these regulations therefore required the Appeals Council to review the ALJ's decision. Plaintiff argues that the

Appeals Council erred by both denying review and not making findings supporting the denial. Neither ground has merit.

Notwithstanding plaintiff's failure to even address how the records, all of which predate the hearing, were either new or material, the Appeals Council's denial of review is not reviewable in this court because the denial is nonfinal agency action. *See* 20 C.F.R. §§ 404.981, 416.1481; 42 U.S.C. §§ 405(g) (permitting appeals of final decision of the Commissioner), 1383(c)(3) (same); *see also Calvey v. Astrue,* No. CV 12–0472–JPR, 2013 WL 180033, at *3 (C.D. Cal. 17 Jan. 2013) ("The Court '[does] not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action.'" (quoting *Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012))); *Barnes v. Astrue,* No. 12-29-JBC, 2013 WL 66216, at *4 (E.D. Ky. 4 Jan. 2013). Instead, the Appeals Council's denial of review rendered the ALJ's decision the final decision of the Commissioner, and it is that decision which is now before the court. *See* 20 C.F.R. §§ 404.981, 416.1481; 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Calvey*, 2013 WL 180033, at *3; *Barnes,* 2013 WL 66216, at *4.

Moreover, the Appeals Council is not required to make specific findings of fact or explain its rationale for its denial of a request for review. *Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011) ("[N]othing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review."); *Green v. Astrue,* No. 4:11–1817–RMG, 2013 WL 267626, at *2 (D.S.C. 24 Jan. 2013) ("The Social Security Regulations do not require the Appeals Council expressly to weigh the newly produced evidence and reconcile it with previously produced conflicting evidence before the ALJ. Instead, the regulations require only that the Appeals Council make a decision whether to review the case,

and, if it chooses not to grant review, there is no express requirement that the Appeals Council weigh and reconcile the newly produced evidence." (citing *Meyer*, 662 F.3d at 705-06)). Plaintiff's contention that the Appeals Council's failure to make specific findings constitutes reversible error is therefore meritless.

## CONCLUSION

After careful consideration of the ALJ's decision, the other portions of the record in this case, and the applicable law, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 24) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 22) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the respective parties or, if represented, their counsel. Each party shall have until 23 July 2015 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described**

**above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This 9th day of July 2015.

James E. Gates
United States Magistrate Judge